# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

MCDONALD'S CORPORATION,

                    Plaintiff,

v.                                                    Case No. 25-CV-473-JPS

STOP N SHOP, LLC,

                    Defendant.                        **ORDER**

## 1.    INTRODUCTION

On March 31, 2025, Plaintiff McDonald's Corporation ("Plaintiff") sued Defendant Stop N Shop, LLC ("Defendant"), alleging breaches of contract, breach of the implied duty of good faith, and unjust enrichment. ECF No. 1. On July 31, 2025, the parties engaged in settlement negotiations, including mediation. ECF No. 14 at 2. The mediation was successful and culminated in the parties signing an agreement in the form of a term sheet (the "Term Sheet"). *Id.*; *see also* ECF No. 14-1. On October 17, 2025, Plaintiff filed a motion to enforce the term sheet and the unsigned settlement agreement that arose from it, including within their motion a request for the attorney's fees and costs incurred in enforcing the settlement agreement. ECF No. 11.  Simultaneously, Plaintiff filed a motion to seal the exhibits filed in support of its motion to enforce the settlement agreement. ECF No. 13. Defendant did not respond to either motion. For the reasons stated herein, the Court will grant Plaintiff's motion to enforce the settlement agreement, permit Plaintiff to move for payment of its attorneys' fees within fourteen (14) days of this Order, and deny Plaintiff's motion to seal the exhibits filed in support of its motion to enforce, though it will

maintain such exhibits under seal and order Plaintiff to submit appropriately redacted, publicly available versions.

## 2. BACKGROUND

### 2.1 The Lawsuit[1]

In its complaint, Plaintiff first alleged that, in violation of the lease governing the subject property in Wisconsin (the "Lease"), Defendant had failed to pay Plaintiff owed common area maintenance ("CAM") charges. ECF No. 1 at 2–4. Second, Plaintiff alleged that Defendant failed to repair a high-rise sign pole that fell on the subject property in 2023, also in violation of the Lease. *Id.* at 5. Before filing the complaint, Plaintiff sent several demand letters to Defendant requesting that Defendant remediate these failures and comply with its obligations under the Lease. *Id.* at 2–5. It was only upon Defendant's total failure to respond to the demand letters that Plaintiff filed the instant lawsuit. *Id.* at 4–5.

### 2.2 The Settlement Negotiations

On July 31, 2025, Plaintiff's representatives and counsel traveled to Defendant's counsel's office in Covington, Kentucky to attend a day-long mediation session to negotiate a resolution to the current lawsuit. ECF No. 14 at 2. Also in attendance were Defendant's counsel, Defendant's representative, and a mediator selected by Defendant's counsel. *Id.* The mediation was successful, culminating in both parties signing the Term Sheet. *Id.* The Term Sheet set forth the terms material to settling the case. Specifically, the Term Sheet contained, in effect, eleven terms addressing:

---

[1] The Court draws the facts herein in part from the declaration at ECF No. 14. Given Defendant's total lack of response, the Court treats ECF No. 14 and the factual allegations contained therein as undisputed.

1. the execution of the ultimate settlement agreement;

2. Defendant's obligation to compensate Plaintiff for all outstanding CAM charges;

3. the parties' agreement regarding how to split certain portions of the monthly CAM charges going forward;

4. Plaintiff's intention to manage the replacement and repair of the pole sign and Defendant's corresponding obligation to compensate Plaintiff for the costs of such replacement and repair;

5. Defendant's prepayment obligations for CAM charges;

6. Defendant's obligation to reimburse Plaintiff for a portion of the attorney's fees incurred in litigating the instant case;

7. certain matters regarding the Lease's Notice provision and party contact information;

8. Defendant's agreement to enter into a confession of judgment, consent judgement, agreed judgement, or similar instrument, to be included in the ultimate settlement agreement;

9. the ongoing nature of the obligations in the term sheet;

10. an agreement that the Term Sheet includes all material terms and shall be a binding and enforceable contract; and

11. the right of the prevailing party to recover attorney's fees and costs incurred in enforcing the term sheet or settlement agreement.

*See generally* ECF No. 14-1. Defendant's representative and attorney signed the Term Sheet and agreed to these terms "[i]n exchange for dismissal of th[is] lawsuit." *Id.* at 2–3. The parties also agreed that "[t]he prevailing party shall be entitled to recover its attorneys' fees and costs incurred in enforcing th[e] [T]erm [S]heet or the Settlement Agreement." *Id.* at 3.

Following the execution of the Term Sheet—and in accordance with its terms—counsel for Plaintiff began preparing the settlement agreement (the "Settlement Agreement"). ECF No. 14 at 3. Plaintiff's counsel sent a draft of the Settlement Agreement to Defendant's counsel for review on August 27, 2025. *Id.* Defendant did not respond for several weeks. *Id.* Plaintiff's counsel contacted the mediator to request that he contact Defendant's counsel regarding the draft Settlement Agreement, and the mediator agreed to do so. *Id.*

On or around September 22, 2025, Defendant's counsel contacted Plaintiff's counsel. *Id.* Defendant's counsel indicated that he had sent the draft Settlement Agreement to Defendant and that he hoped to return his review of it in the coming days, if not the same day. *Id.*

On October 3, 2025, after not hearing from Defendant's counsel, Plaintiff's counsel sent a demand letter to Defendant's counsel, requesting that Defendant provide Plaintiff with either suggested revisions or a signed version of the draft Settlement Agreement. *Id.* at 4. In the demand letter, Plaintiff indicated that if Defendant failed to do so by October 10, 2025, Plaintiff would file the present motion to enforce. *Id.*

On October 10, Defendant's counsel contacted Plaintiff's counsel. *Id.* Though Defendant's counsel did not return suggested revisions or a signed copy, the parties spent nearly an hour on the phone reviewing the draft Settlement Agreement. *Id.* Defendant's counsel offered minor, immaterial revisions to the draft and represented that, but for those minor revisions, he had no objection to the Settlement Agreement. *Id.* He further represented that Defendant was prepared to sign the Settlement Agreement on October 15, 2025. *Id.* Plaintiff's counsel incorporated Defendant's suggestions and returned a revised version to Defendant's counsel on October 13, 2025. *Id.*

On October 14, 2025, Plaintiff and Defendant's respective counsels reviewed the final version of the Settlement Agreement together. *Id.* at 5. Defendant's counsel represented that he had no objections and would have his client sign the following day, October 15, 2025. *Id.* That same day, Plaintiff's counsel sent Defendant's counsel an execution version of the Settlement Agreement. *Id.*

Since then, Plaintiff's counsel has been unable to contact Defendant's counsel. *Id.* Plaintiff's counsel has emailed and called Defendant's counsel, attempting to confer regarding the Settlement Agreement, the instant motion to enforce, and the instant motion to seal. *Id.*

Defendant and its counsel have failed to respond, and Plaintiff has not received a signed version of the Settlement Agreement. *Id.* As a result, Plaintiff filed the motions at issue in this Order.

3.      **ANALYSIS**

3.1      **Choice of Law**

Before addressing the substance of this dispute, the Court must address a threshold question—which state law applies to govern the interpretation of the agreements at issue here? Plaintiff asserts that the Term Sheet and Settlement Agreement are governed by Kentucky law based on terms found in the unsigned Settlement Agreement. ECF No. 12 at 6 (citing ECF No 14-2 at 6). It also argues that "[i]t would make no difference if [Defendant] disputed the choice of law provision." *Id.* at 6 n.2.

The Court cannot use the choice of law identified in the Settlement Agreement at issue to determine whether the Settlement Agreement is enforceable—at least not without implicitly adopting a view in favor of enforcing the Settlement Agreement's terms. Thus, the Court must undertake a "choice of law" analysis. *Jean v. Dugan*, 20 F.3d 255, 260 (7th

Cir. 1994) ("Because the choice between Indiana and Illinois law could make a difference in the outcome of this case, we must decide which applies here."); *Evergreen Nat. Indem. Co. v. R & W Clark Const., Inc./Cont'l Const.*, No. 10 C 1788, 2011 WL 5122697, at *4 (N.D. Ill. Oct. 28, 2011) ("Although the parties do not seem to disagree over which state's law to apply, this case raises choice-of-law issues that must be resolved prior to proceeding.").[2]

In a diversity case, the federal court must apply the choice of law rules of the forum state to determine applicable substantive law. *Thomas v. Guardsmark, Inc.*, 381 F.3d 701, 704–05 (7th Cir. 2004) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). Here, that state is Wisconsin.

> In contract disputes, Wisconsin courts apply the law of the state with which the contract has its most significant relationship. . . . Under this approach, a court analyzes both the qualitative and quantitative significance of the contacts. . . . Relevant contacts include: (1) the place of contracting; (2) the place of negotiation of the contract; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the respective domiciles, places of incorporation and places of business of the parties.

*Rockwell Automation, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh PA*, 494 F. Supp. 2d 1009, 1013 (E.D. Wis. 2007), *aff'd*, 544 F.3d 752 (7th Cir. 2008) (internal citations and quotation marks omitted).

---

[2] Such a choice of law analysis is especially necessary where, as here, the choice of law is outcome-determinative—contrary to what Plaintiff argues. Wisconsin Statute § 807.05, in relevant part, requires that settlement agreements be "made in writing and subscribed by the party to be bound thereby or the party's attorney." Kentucky law has no such requirement and holds that "settlement agreements, even those not yet reduced to writing, may be found to be enforceable contracts." *Cent. Bank v. Gill*, No. 2011-SC-000442-DG, 2013 WL 5436257, at *4 (Ky. Sept. 26, 2013) (citing *Motorists Mut. Ins. Co. v. Glass*, 996 S.W.2d 437, 445 (Ky. 1997)). Where, as here the parties did everything short of signing on the dotted line, the distinction between a state that requires signatures and a state that does not becomes a weighty one.

In this case, Plaintiff is a Delaware corporation with its principal place of business in Illinois. ECF No. 1 at 1. Defendant is a Kentucky limited liability company with its principal place of business in Kentucky. *Id*. The Term Sheet was entirely negotiated in Kentucky, and the Settlement Agreement was negotiated both in Kentucky (to the extent it merely incorporates terms of the Term Sheet) and presumably across states including Washington (where Plaintiff's counsel was based), Illinois (where Plaintiff's representatives were based), and Kentucky (where Defendant and Defendant's counsel were based). ECF No. 14 at 2. The Term Sheet was signed in Kentucky. *Id*. The subject matter of both contracts is the settlement of the case. While the payment and release of claims that form the subject matter of the Term Sheet and Settlement Agreement are tied only loosely to Wisconsin—insofar as they are obligations that can and will be fulfilled from multiple locations—the invocation of plans for common area maintenance and sign pole repair in both the Term Sheet and Settlement Agreement implies somewhat stronger ties to Wisconsin.[3]

Overall, the Court finds that Kentucky has the most significant relationship with this contract. The contracts at issue were negotiated and, as applicable, signed there. The Defendant whose conduct is at issue is located there and took the complained-of action—namely, the failure to

---

[3]The Court ought to take a moment to distinguish between, on the one hand, the underlying Lease and, on the other hand, the Term Sheet and Settlement Agreement. The underlying Lease governing the rights and responsibilities of each party with respect to the subject property, which is in Wisconsin, would almost certainly be governed by Wisconsin law. However, at this juncture, Plaintiff does not ask the Court to enforce the underlying Lease, but to enforce the Term Sheet and Settlement Agreement, which are entirely different contracts implicating different locations, rights, and responsibilities. In other words, the fact that the underlying property is in Wisconsin is less relevant to an analysis of the Term Sheet and Settlement Agreement than it would be to an analysis of the Lease.

abide by the terms of the Term Sheet and Settlement Agreement (as opposed to the complained-of actions in the underlying dispute, which occurred in Wisconsin)—there. The agreements here are fundamentally agreements to pay a sum of money and release a claim, which do not have any particularly strong geographical tie aside from dismissing the case before this Court. And Defendant is both incorporated and has its principal place of business in Kentucky; Plaintiff is incorporated and headquartered in states whose contacts with this dispute are minimal. As such, the Court is compelled to find that Kentucky law applies.

Moreover, where the choice of law is unclear upon analysis of the significant contacts factors—which the Court does not find to be especially so in this case—the Court may analyze five "choice influencing factors," including "predictability of results, maintenance of interstate and international order, simplification of the judicial task, advancement of the forum's governmental interests, and application of the better rule of law." *Thomas Middlesex Ins. Co. v. Brinks, Inc.*, 2020 WL 433886, at *2 (E.D. Wis. Jan. 28, 2020) (citing *Glaeske v. Shaw*, 661 N.W.2d 420, 427 (Wis. Ct. App. 2003)); *see also J3 Eng'g Grp., LLC v. Mack Indus. of Kalamazoo, LLC*, 390 F. Supp. 3d 946, 954 (E.D. Wis. 2019) (citing *NCR Corp. v. Transp. Ins. Co.*, 823 N.W.2d 532, ¶ 14 (Wis. Ct. App. 2012)). The Court elects to analyze these factors here for the sake of complete analysis.

"The first factor, predictability of results, deals with the parties' expectations." *State Farm Mut. Auto. Ins. Co. v. Gillette*, 641 N.W.2d 662, ¶ 54 (Wis. 2002) (citation omitted). Here, we know the expectation of at least one of the parties as manifested in the Settlement Agreement and the declaration at ECF No. 14. Plaintiff's expectation was that the agreements would be governed by Kentucky law. ECF No. 12 at 6. Indeed, the

representation in Plaintiff's memorandum in support of its motion to enforce the Settlement Agreement is that it was *both* parties' expectation that the agreements would be enforced in accordance with Kentucky law. *Id*.

The second factor—maintenance of interstate and international order—similarly counsels in favor of applying Kentucky law. This factor "requires that the jurisdiction that is minimally concerned defer to the jurisdiction that is substantially concerned." *Gillette*, 641 N.W.2d at ¶ 55. Wisconsin certainly has an interest in making sure the common areas of the subject property are maintained and that the sign pole is repaired as a result of the Settlement Agreement, but this only tangentially implicates the state's interest in protecting the health and safety of its citizens. *Peters v. Astrazeneca, LP*, 417 F. Supp. 2d 1051, 1055 (W.D. Wis. 2006) (citations omitted). Meanwhile, Kentucky's interest in ensuring that contracts negotiated or made within its borders are properly enforced is much more directly implicated.

The third factor—simplification of the judicial task—does not particularly sway the Court in either direction. The factor cautions that a "simple and easily applied rule of substantive or procedural law is to be preferred." *Heath v. Zellmer*, 151 N.W.2d 664, 672 (Wis. 1967). While it is surely true that a "court's task is rarely simplified when . . . [it] must apply [itself] to foreign rather than forum law," *id.* at 673, Kentucky contract law is no more complicated than Wisconsin contract law. Its prescriptions for contract-making are largely coterminous with those of Wisconsin, with merely one distinction that is relevant here—namely, the distinction between requiring a signed writing and permitting oral settlement

agreements. The Court could easily apply either jurisdiction's law to this matter.

With respect to the fourth factor—advancement of the forum's governmental interests—the Wisconsin Supreme Court has articulated the applicable standard.

> The question in private litigation . . . is whether the proposed nonforum rule comports with the standards of fairness and justice that are embodied in the policies of the forum law. If it appears that the application of forum law will advance the governmental interest of the forum state, this fact becomes a major, though not itself a determining, factor in the ultimate choice of law.

*Heath*, 151 N.W.2d at 673. This factor counsels slightly in favor of Wisconsin law. Wisconsin Statute § 807.05 requires that settlement agreements either be made in court and entered in the minutes or recorded or be made in writing and signed. The statute is rooted in the statute of frauds, and its purpose is to "prevent disputes and uncertainties as to what was agreed upon." *Adelmeyer v. Wis. Elec. Power Co.*, 400 N.W.2d 473, 475 (Wis. Ct. App. 1986) (quoting *Oostburg State Bank v. United Sav. & Loan Ass'n*, 372 N.W.2d 471, 475 (Wis. Ct. App. 1985), *aff'd on other grounds*, 386 N.W.2d 53 (1986)). In some sense, this should indicate that Wisconsin's interests would not be satisfied by Kentucky law. However, two considerations weaken this conclusion. First, the writing requirement of Wisconsin Statute § 807.05 "was intended to prevent fraud and perjury, not to give one party or another a technical escape from a fair and definite agreement." *U.S. Oil Co. v. Midwest Auto Care Servs., Inc.*, 440 N.W.2d 825, 828 (Wis. Ct. App. 1989) (citation omitted). On the facts of this case, given the ample documentation of the parties' conclusions at mediation, the concern regarding fraud and perjury is weak. Second, there is no dispute regarding what was agreed

upon, as the Court treats the instant motion and the facts contained therein as unopposed. So while this factor tilts slightly in favor of applying Wisconsin law, it is truly only a slight tilt.

The final factor—application of the better rule of law—is not a particularly forceful impetus in one direction or the other. The Court cannot say that either Wisconsin or Kentucky's contract laws are "anachronistic or fail[] to reflect modern trends." *Gillette*, 641 N.W.2d at ¶ 66. Instead, both are "founded on a rational basis and serve[] a discernible purpose." *Id.*

With all of this under consideration, the Court finds a net skew in favor of applying Kentucky contract law and will do so below.

### 3.2    Legal Standards

District courts have the authority to enforce settlement agreements in cases pending before them. *Wilson v. Wilson*, 46 F.3d 660, 664 (7th Cir. 1995) ("[A] district court possesses the inherent or equitable power summarily to enforce an agreement to settle a case pending before it." (collecting cases)). A settlement agreement is a contract governed by state contract law—here, Kentucky law. *In re LWD, Inc.*, No. 03-51021, 2009 WL 5198060, at *4 (W.D. Ky. Dec. 23, 2009) ("A settlement agreement is 'a type of contract and therefore [is] governed by contract law.'" (quoting *Frear v. P.T.A. Indus., Inc.*, 103 S.W.3d 99, 105 (Ky. 2003))).

Under Kentucky law, "[t]he elements of a contract are: offer and acceptance, full and complete terms, and consideration." *Collins v. Ky. Lottery Corp.*, 399 S.W.3d 449, 455 (Ky. Ct. App. 2012) (citing *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 384 (Ky. Ct. App. 2002)). Relatedly, mutual assent—also known as a "meeting of the minds"—is required in order for an enforceable contract to be found. *Utilities Elec. Mach. Corp. v. Joseph E. Seagram & Sons*, 187 S.W.2d 1015, 1018 (Ky. Ct. App.

1945). Importantly, Kentucky law holds that "settlement agreements, even those not yet reduced to writing, may be found to be enforceable contracts." *Cent. Bank v. Gill*, No. 2011-SC-000442-DG, 2013 WL 5436257, at *4 (Ky. Sept. 26, 2013) (citing *Motorists Mut. Ins. Co. v. Glass*, 996 S.W.2d 437, 445 (Ky. 1997)).

### 3.3 The Term Sheet

There is little question that the Term Sheet represents an enforceable contract under Kentucky law. Several cases have addressed issues very similar to this, finding that documents serving as precursors to fuller agreements are enforceable provided that they evince the characteristics of a contract.

For instance, in *Cope v. Gateway Area Development District, Inc.*, a 2017 case, the parties "jointly informed the Court that they had reached a settlement agreement and that they only needed to finalize a release agreement to complete the settlement." No. 0:14-CV-00017-HRW, 2017 WL 1064019, at *1 (E.D. Ky. Mar. 20, 2017). During the next few weeks of negotiation, the plaintiff's counsel emailed the defendants' counsel, indicating that the client would sign the agreement with a few minor modifications. *Id*. The defendants' counsel sent a revised draft incorporating the plaintiff's changes. *Id*. The plaintiff then refused to sign. *Id*. The court found the fact that the plaintiff would not execute the written agreement was no bar to its enforcement. *Id.* at *2. The plaintiff's counsel had confirmed that "Plaintiff would sign the agreement" and the defendant's counsel had "confirmed that he had accepted all of Plaintiff's proposed changes." *Id*. The court found an enforceable contract, explaining that "[a]t that point, all of the substantial terms of the parties' agreement

had been agreed upon and memorialized, leaving here nothing left for future settlement." *Id*.

Then, in 2019, in *Matthews v. Wells Fargo Bank, N.A.*, the Kentucky Court of Appeals was faced with a cased in which parties exchanged emails containing settlement terms. No. 2018-CA-000609-MR, 2019 WL 2484535, at *1 (Ky. Ct. App. June 14, 2019). The court found that "[a] plain reading of the email exchanges reveals the complete and detailed terms of the settlement; an offer accepted by [the plaintiff] subject to a contingency which [the defendant] likewise accepted; and consideration by both parties." *Id.* at *4. The court therefore found a that "valid and binding settlement agreement existed" and endorsed the trial court's enforcement of the same. *Id*.

Finally, also in 2019, the Sixth Circuit confronted a case in which the parties orally agreed to settle the case and filed a notice of settlement that same day. *Hall v. City of Williamsburg*, 768 F. App'x 366, 371 (6th Cir. 2019). Defense counsel subsequently sent settlement documents to the plaintiff, but the plaintiff refused to sign. *Id*. The Sixth Circuit upheld the district court's decision to enforce the settlement agreement, finding that while courts interpreting Kentucky law have refused to enforce "preliminary business agreements . . . and letters of intent with material terms left open, . . . the settlement agreement here satisfied all the elements of a contract." *Id.* at 379 (citations omitted).

In short, Kentucky has a substantial history of enforcing precursors to more formal agreements, so long as those agreements satisfy general contract requirements, and the Court sees no reason to depart here from the reasoning adopted in these earlier cases.

The Term Sheet represents a full and enforceable contract on its own. Notwithstanding the fact that the Term Sheet states that dismissal of the lawsuit is "subject to the execution of a mutually agreeable settlement agreement," ECF No. 14-1 at 2, this is not a case of an "agreement to agree," which would not be enforceable as a contract in Kentucky. *First Tech. Cap., Inc. v. JPMorgan Chase Bank, N.A.*, 53 F. Supp. 3d 972, 988 (E.D. Ky. 2014). The execution of a formal settlement agreement was certainly contemplated, but it was not a precondition to the parties being bound. *See Moore Prop. Invs., LLC v. Fulkerson*, No. 2018-CA-000577-MR, 2020 WL 4515418, at *2 (Ky. Ct. App. July 2, 2020) (enforcing a settlement agreement notwithstanding a clause stating "[t]he parties will work in good faith to memorialize the terms of this settlement and the sale in subsequent documents which will be prepared by [the plaintiff's] counsel and subject to approval by [the defendant's] counsel.").[4]

Instead, the parties' words and actions at the Term Sheet stage evince a clear intent to be bound by the Term Sheet. All material terms of the parties' agreement, including the relevant dollar amounts, were laid out in the Term Sheet. *See generally* ECF No. 14-1. The parties were *obligated* to "promptly execute" the Settlement Agreement. *Id.* at 2. Indeed, the parties even expressly agreed that "this term sheet includes all material terms that the parties have agreed to and shall be a binding and enforceable contract." *Id.* at 3. Kentucky case law even indicates that "term sheets" specifically are

_____

[4]For the reasons described *infra* Section 3.4, it would not matter if the Court found this to be an agreement to agree or, in other words, an agreement enforceable only upon the occurrence of a contingency. That would-be contingency is the execution of the Settlement Agreement, which the Court finds to be a valid and enforceable contract in its own right. Put simply, the would-be contingency manifested.

Page 14 of 21

Case 2:25-cv-00473-JPS     Filed 01/12/26     Page 14 of 21     Document 19

enforceable where they act like a settlement agreement and function to "resolve[] a dispute between the parties." *In re LWD, Inc.*, 2009 WL 5198060, at *5. The Court similarly finds the Term Sheet here to be a full and enforceable contract under Kentucky law.

### 3.4 The Settlement Agreement

The Court finds the instant case highly similar to *Cope*. This leads to the ultimate question—should the Court merely enforce the Term Sheet as is, or is the Court in a position to enforce the Settlement Agreement itself, notwithstanding the absence of a signature? In this case, the Court is prepared to enforce the Settlement Agreement itself.

"To determine if the parties actually reached a settlement agreement[,] courts look to the parties' negotiations." *United States Liab. Ins. Co. v. Watson*, 626 S.W.3d 569, 576 (Ky. 2021) (citing *Gen. Motors Corp. v. Herald*, 833 S.W.2d 804 (Ky. 1992)). Here, the conduct of the parties during negotiations clearly evinces a meeting of the minds and an intent to be bound by the Settlement Agreement. Plaintiff's counsel presented Defendant's counsel with a draft of the Settlement Agreement. ECF No. 14 at 3. The parties' respective attorneys spent nearly an hour on the phone hashing out the details of the agreement. *Id.* at 4. Defendant's counsel offered minor revisions and represented that, but for those minor revisions, he had no objection to the Settlement Agreement and even went so far as to say that Defendant was prepared to sign on a specific date if those revisions were incorporated. *Id.* Plaintiff's counsel incorporated Defendant's suggestions and returned a revised version to Defendant's counsel. *Id.* Counsel then reviewed the final version together, and Defendant's counsel said he had no objections and that his client would sign the following day.

*Id.* at 5. Plaintiff's counsel sent an execution version, and Defendant simply did not sign. *Id*.

The fact of a missing signature is immaterial under Kentucky law in these circumstances. In *Hansen v. Roberts*, a 2024 case, the plaintiff sent the defendants a draft settlement agreement via email. No. 2022-CA-1106-MR, 2024 WL 1685147, at *1 (Ky. Ct. App. Apr. 19, 2024). The defendants accepted the agreement via email but subsequently refused to execute the agreement. *Id*. The Kentucky Court of Appeals found that the lack of signature was of no consequence and upheld the lower court's finding that there was a valid and enforceable settlement agreement. *Id*. at *4. The Court of Appeals explained that "the communication between the parties along with the draft of the settlement agreement establish the necessary elements to form a binding contract, including a meeting of the minds." *Id.*

Here, too, the fact of a missing signature is immaterial because all elements of a valid contract are present. There was a clear offer in the form of Plaintiff's counsel sending Defendant a revised Settlement Agreement containing all of Defendant's proposed changes. There was acceptance in Defendant's counsel saying he had no objections and that his client would sign. The terms were full and complete, containing the eleven essential terms from the Term Sheet, plus a few minor terms addressing, *inter alia*, confidentiality, governing law, and there being no admission of liability. *See generally* ECF No. 14-2. There was consideration in the form of the "promises, releases and covenants" in the Settlement Agreement. *Id.* at 2. And on a more overarching note, there was mutual assent, or a meeting of the minds, as evidenced by the parties landing on an unobjected-to version of the Settlement Agreement and representing their readiness to sign. ECF

No. 14 at 5. The Settlement Agreement was a valid contract, and the Court will enforce it as such.

Accordingly, the Court will grant Plaintiff's motion to enforce the settlement. The Court will order the Clerk of Court to administratively close the case and direct the parties to promptly file Federal Rule of Civil Procedure 41 dismissal paperwork.

### 3.5 Attorneys' Fees and Costs

The Court is prepared to award Plaintiff the attorneys' fees and costs incurred in enforcing the Settlement Agreement. The Term Sheet plainly states, "[t]he prevailing party shall be entitled to recover its attorneys' fees and costs incurred in enforcing this term sheet or the Settlement Agreement." ECF No. 14-1 at 3. Insofar as the Term Sheet is a valid contract, the Court finds that Defendant must pay Plaintiff its attorneys' fees and costs. Plaintiff therefore shall file a fee motion and supporting documentation within fourteen (14) days of this Order.

### 4. PLAINTIFF'S MOTION TO SEAL

Plaintiff also requests that the Court seal the Term Sheet, ECF No. 14-1, and the Settlement Agreement, ECF No 14-2.[5] Specifically, Plaintiff argues that the Term Sheet and Settlement Agreement "contain confidential business information and settlement terms that the parties have agreed to keep confidential." ECF No. 13 at 1. Furthermore, Plaintiff argues, "[p]ublic disclosure of the contents of these documents could harm the legitimate business interests of both parties by revealing sensitive commercial

---

[5]Plaintiff also filed a demand letter, ECF No. 14-3, provisionally under seal, so it is presumably also subject to the motion to seal. However, for the same reasons stated below, the motion to seal will be denied with respect to the demand letter, and the Court will order an appropriately redacted, publicly available version of such demand letter to be filed.

information." *Id.* at 2. As a result, the parties' interest in confidentiality, rooted in their interest in their "competitive positions," outweighs the public's interest in access. *Id.* For the reasons set forth below, the Court will deny this motion. However, recognizing that certain material within the documents is subject to redaction under Federal Rule of Civil Procedure 5.2(a)(4), the Court will order the Clerk of Court to maintain the documents currently filed under seal and will order Plaintiff to file appropriately redacted versions of the Term Sheet, Settlement Agreement, and demand letter in publicly available format.

### 4.1    Legal Standard

"Although documents submitted to a court are presumptively available for public inspection in order to facilitate public monitoring of the courts, . . . portions of documents that are shown to contain trade secrets, or other information that would cause undue private or public harm if disclosed, as by invading personal privacy gratuitously, may be kept under seal." *SmithKline Beecham Corp. v. Pentech Pharms., Inc.*, 261 F. Supp. 2d 1002, 1008 (N.D. Ill. 2003) (citations omitted). This district specifically requires that a "motion to seal . . . demonstrat[e] good cause for withholding the document . . . from the public record." CIV. L. R. 79(d)(3). A party seeking to seal items has the burden of showing cause and must "analyze in detail, document by document, the propriety of secrecy, providing reasons and legal citations." *Baxter Int'l, Inc. v. Abbott Lab'ys*, 297 F.3d 544, 548 (7th Cir. 2002). "Narrow, specific requests will be granted when based on articulated, reasonable concerns for confidentiality." *KM Enter., Inc. v. Global Traffic Techs., Inc.*, 725 F.3d 718, 734 (7th Cir. 2013) (citing *Baxter Int'l*, 297 F.3d at 546–47).

### 4.2    Analysis

Here, Plaintiff does not point to any specific provisions of the Term Sheet or Settlement Agreement that would "harm the legitimate business interests" of either party "by revealing sensitive commercial information." ECF No. 13 at 2. Surely it is not the case that the *entire* Term Sheet and Settlement Agreement are commercially sensitive, but the Court has no way of discerning what portions are sensitive, nor for what reason they are sensitive. Plaintiff's argument is both cursory and conclusory.

Furthermore, Plaintiff cites to no cases or statutes for the proposition that "parties have a substantial right to rely on confidentiality provisions of settlement agreements." *Joy Glob. Inc. v. Columbia Cas. Co.*, 555 F. Supp. 3d 589, 596–97 (E.D. Wis. 2021), *aff'd sub nom. Komatsu Mining Corp. v. Columbia Cas. Co.*, 58 F.4th 305 (7th Cir. 2023). "The fact that the parties agree to exchange documents confidentially . . . does not [state] sufficient good cause for 'sealing' those documents." *Kerkman v. D'Amico*, No. 20-CV-1779-PP, 2022 WL 993569, at *3 (E.D. Wis. Mar. 31, 2022) (citing CIV. L. R. 79(d) and *Medline Indus., Inc. v. Diversey, Inc.*, 2021 WL 4428212, at **2-3 (E.D. Wis. Sept. 27, 2021)).

Finally, Plaintiff does not argue why "[t]he strong presumption of public disclosure" of the Term Sheet and Settlement Agreement, which "form[] the basis of the parties' dispute and the district court's resolution" thereof, ought to be overcome here. *Baxter Int'l, Inc*, 297 F.3d at 548.

In short, Plaintiff did not satisfy its burden of showing good cause to override the presumption of public interest in access to the Term Sheet and Settlement Agreement. As such, Plaintiff's motion to seal will be denied.

However, the Court notes that certain material within these documents appears subject to redaction under Federal Rule of Civil

Procedure 5.2(a)(4). The Court will direct the Clerk of Court to maintain the documents under seal and order Plaintiff to file redacted versions of any of the applicable documents. Those versions should be filed in publicly available format.

5.    **CONCLUSION**

For the reasons stated above, the Court will enforce the Settlement Agreement and incorporate the terms of Plaintiff's proposed order, ECF No. 11-1, below. The Court will direct the Clerk of Court to administratively close the case and the parties to file appropriate Federal Rule of Civil Procedure 41 dismissal paperwork. It will further award Plaintiff its attorneys' fees and costs incurred in enforcing this matter. However, for the reasons described *supra* Section 4, the Court will deny Plaintiff's motion to seal the Term Sheet and Settlement Agreement. That said, it will maintain the documents under seal and order Plaintiff to file redacted versions of the documents in publicly available format. Finally, Plaintiff's subsequent motion to extend the deadlines in the Court's scheduling order will be denied as moot, because the motion to enforce the settlement agreement, which has now been granted, is dispositive of this case. ECF No. 17.

Accordingly,

**IT IS ORDERED** that Plaintiff McDonald's Corporation's motion to enforce the Settlement Agreement, ECF No. 11, be and the same is hereby **GRANTED**. The parties are hereby ordered to immediately comply with the terms of the Settlement Agreement that Plaintiff filed as Exhibit B to the Declaration of Jacob A. Neeley in Support of Plaintiff's Motion to Enforce Settlement Agreement, ECF No. 14-2;

**IT IS FURTHER ORDERED** that Plaintiff McDonald's Corporation shall **FILE** a fee motion and supporting documentation **within fourteen (14) days of this Order**;

**IT IS FURTHER ORDERED** that Plaintiff McDonald's Corporation's motion to seal the documents found at ECF Nos. 14-1,14-2, and 14-3, ECF No. 13, be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that Plaintiff McDonald's Corporation **FILE** redacted versions of the documents found at ECF Nos. 14-1, 14-2, 14-3, to the extent redaction is necessary in any of them pursuant to Federal Rule of Civil Procedure 5.2(a)(4), in publicly available format on or before **January 26, 2026**;

**IT IS FURTHER DIRECTED** that the Clerk of Court maintain the documents at ECF Nos. 14-1, 14-2, and 14-3 under seal until further order of the Court;

**IT IS FURTHER ORDERED** that Plaintiff McDonald's Corporation's motion to extend deadlines, ECF No. 17, be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that the Clerk of Court **ADMINISTRATIVELY CLOSE** this case; and

**IT IS FURTHER ORDERED** that the parties promptly **FILE** Rule 41 dismissal paperwork.

Dated at Milwaukee, Wisconsin, this 12th day of January 2026.

BY THE COURT:

_____

J. P. Stadtmueller
U.S. District Judge